**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 97-40997
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MANUEL DELGADO,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Southern District of Texas
Corpus Christi Division
(No. C-97-CR-62-9)
_____

June 8, 1998

Before GARWOOD, JONES and WIENER, Circuit Judges.

PER CURIAM:[*]

Manuel Delgado appeals his guilty-plea conviction for aiding and abetting money laundering in violation of 18 U.S.C. §§1956(a)(1)(A)(I) & 2.[1] Delgado asks us to vacate his sentence and order a new trial, arguing that the court failed to comply with FED. R. CRIM. P. 11 at his re-arraignment. Finding no reversible

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1]18 U.S.C. §§1956(a)(1)(A)(I) & 2 (1994).

error, we affirm.

I

FACTS AND PROCEEDINGS

On March 13, 1997, Delgado was charged in a multi-count, multi-defendant indictment with violations of 21 U.S.C. §841(a)(1)[2] —— aiding and abetting in the possession with intent to distribute more than 100 kilograms of marijuana —— and 21 U.S.C. §846[3] —— conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana. Delgado pleaded not guilty to the charges on April 25.

Thereafter, on June 2, the government filed a criminal information charging Delgado with aiding and abetting money laundering in violation of 18 U.S.C. §§1956(a)(1)(A)(I) & 2. Delgado entered into a plea agreement that same day, pursuant to which the government dismissed the possession charges against Delgado and he pleaded guilty to the money laundering charge. Eventually, he was sentenced to 120 months' imprisonment, three years' supervised release, and a $50 special assessment.

The charges against Delgado stemmed from his alleged participation in a drug-trafficking ring that moved marijuana from Corpus Christi, Texas to Norfolk and Virginia Beach, Virginia. In May 1994, a Jefferson County, Texas, deputy sheriff stopped a car

---

[2]21 U.S.C. §841(a)(1) (1994).

[3]21 U.S.C. §846 (1994).

driven by Jose Maldonado and, following Maldonado's consent to a search of the vehicle, found $14,995 hidden in a secret compartment. In July, law enforcement authorities seized 350 pounds of marijuana from members of the drug-trafficking conspiracy. Cooperating defendants subsequently informed law enforcement authorities that Delgado had furnished the money recovered from Maldonado's vehicle, and that this money had been earmarked for the purchase of a portion of the marijuana recovered in the July seizure.

In exchange for Delgado's guilty plea under the money laundering charge, the government agreed that, at Delgado's re-arraignment hearing, it would recommend a 3-level reduction for acceptance of responsibility under the United States Sentencing Guidelines[4] (the "Guidelines"), and a thirty-six month sentence. At that hearing, Delgado communicated through an interpreter, the court having ascertained that he could neither read nor write English. He was told to notify the court if he did not understand what was being said or if he needed something repeated. The court then asked Delgado questions regarding his name, age, and family. He answered appropriately, indicating that he understood the interpreter.

Through the interpreter, the court addressed Delgado in open court, informing him of the nature of the offense with which he had

---

[4]See U.S. SENTENCING GUIDELINES MANUAL §3E1.1 (1997).

3

been charged. He twice indicated to the court that his counsel had read the information containing the money laundering charge to him in Spanish, and Delgado's counsel testified that the two had discussed the nature and consequences of the charge. When asked to relay to the court the substance of the explanation of the charge that he had given Delgado in Spanish, counsel replied "I told him that he was charged with having caused the transfer of some $15,000 from Chicago to Texas for the purpose of purchasing marijuana."

Before Delgado entered his guilty plea, the court read the charge to him from the information. Delgado confirmed that he had received a copy of the information and that he understood the nature of the charge to which he was pleading. He further confirmed that he understood the implications of waiving an indictment and that his counsel had read the indictment waiver to him in Spanish. Counsel also stated that he had explained the substance of the waiver to Delgado in Spanish. Delgado reaffirmed his comprehension of the charge, and the government reviewed the elements of money laundering.[5] Delgado did not ask any questions

---

[5]The elements of a section 1956(a)(1) violation include: (1) conducting or attempting to conduct a financial transaction (2) knowing that the transaction involves proceeds from an illegal activity (3) with the intent to promote or further an unlawful activity. United States v. Flores, 63 F.3d 1342, 1360 (5th Cir. 1995), cert. denied, Garza v. United States, —— U.S. ——, 117 S.Ct. 87, 136 L.Ed.2d 43 (1996). At the re-arraignment hearing, the government characterized the elements of money laundering thusly:

> First of all, the defendant must knowingly conduct or attempt to conduct a financial transaction which includes the delivery of

4

or otherwise exhibit any misunderstanding.  He testified that he had been assisted by counsel, with whose advice he was satisfied.

The court informed Delgado of his constitutional rights and advised him that the government would have the burden of proving all elements of the offense with which he had been charged in order to convict him at trial.  Delgado was further advised that he waived these rights by pleading guilty, and that the court was not bound by the plea agreement.  The court also apprised Delgado of the maximum possible penalty to which he was subject, of the effects of supervised release, and of the court's required consideration of the Guidelines in assessing punishment.  Delgado acknowledged that his plea was made freely and voluntarily, and that no one forced, persuaded, or induced him to enter a guilty plea by promising greater leniency from the court or otherwise.

---

> cash for the purchase of marijuana; number two, the defendant must know that the property involved in the financial transaction represents the proceeds of some form [of] unlawful activity; number three, the property involved in the financial transaction must in fact involve the proceeds of specified unlawful activity which includes the dealing in narcotics and other dangerous drugs; and number four, the defendant must engage in the financial transaction with the intent to promote the carrying on of specified unlawful activity, to wit, the importation, sale and dealing in narcotic and other dangerous drugs.

Immediately following this exposition, the court asked Delgado whether he understood that, if he pleaded not guilty, the government would have to prove each of the four elements beyond a reasonable doubt and with competent evidence before he could be convicted.  Delgado responded affirmatively.

The government then read the factual basis for Delgado's guilty plea into the record, stating, in pertinent part, that:

> Manual Delgado was sending several associates from Chicago to Corpus to negotiate the purchase of some marijuana . . . . Mr. Maldonado was stopped . . . for a traffic violation. A consent to search revealed $14,995 in a hidden compartment within the car . . . . During later debriefings and plea agreements the cooperating defendants told agents that the money carried by Maldonado . . . had been supplied by [Delgado] and that it was earmarked for a down payment on the marijuana load that was seized.

Delgado stated that the facts were correct, that he did not disagree with any part of the statement, and that he had nothing to add. The court then accepted Delgado's guilty plea, determining that it was knowing and voluntary and supported by an independent basis in fact.

Subsequently, at the sentencing hearing, Delgado was again afforded the assistance of an interpreter. The court commenced the hearing by ascertaining that Delgado's position had not changed since re-arraignment, and that he was ready for sentencing. Defense counsel stated that he had explained the presentence investigation report (PSR) to Delgado in Spanish. The court asked Delgado if anything in the PSR was incorrect, and the following exchange occurred:

The Defendant: There's something incorrect.

The Court: Okay. Tell me what it is.

The Defendant: Regarding what I was blamed of and what I'm guilty of, I am guilty because I gave him some money,

6

to a person, and there's somebody else involved in the case, so practically the person that is telling the Government the accusation is not the same person that I gave the money to. I wanted to clear this so the Court would know that the Government is saying the person that is accusing me is not the same person I gave the money to.

The Court: Well, the one who is accusing you of doing this is the United States Government.

The Defendant: Yes.

The Court: There's nothing in this —— where in this report does it say someone's accusing you?

The Defendant: It mentions a man, Jose Maldonado. I did not give the money to Jose Maldonado, I gave it to another person and that person gave it to Jose Maldonado.

\* \* \*

The Court: I don't see where it says anywhere that Mr. Delgado gave money to Mr. Maldonado. I don't see that anywhere. What else in your opinion is incorrect, Mr. Delgado?

The Defendant: I declare myself guilty because I loaned that money to that man and that man, according to the Court or the Government, they say that he used that money to buy marijuana or drugs.

The Court: All right. We'll take this plea another time, I mean we'll take this sentencing another time. You need to talk to him, he's lost his acceptance of responsibility.

Mr. Canales (defense counsel): Very good, Judge. Thank you.

The court recessed as a result of the apparent confusion. When the sentencing hearing was reconvened, Delgado denied the factual basis for the money laundering charge, but nonetheless refused to withdraw his guilty plea:

The Court: You are still under oath, Mr. Delgado. Is

7

there anything else incorrect about the presentence investigation report?

The Defendant: No.

Mr. Canales (defense counsel): Judge, if I may?

The Court: Yes, sir.

Mr. Canales: It's not really that there's anything incorrect with the presentence report, Judge, it's paragraph 14 — well, the matter rests on this, Judge: He has not been completely debriefed and he thought that this was the time that he was going to tell everything he knew so that he could ——

The Court: Well, the matter rests is that he said he didn't know that he had laundered money.

Mr. Canales: Well ——

The Court: And that's a big problem.

Mr. Canales: He, well, no, Judge, he is — I know that that would be a problem with the Court and with the AUSA's, but he is accepting responsibility. He understands that he doesn't have to name names at this point and if he perhaps is debriefed later on further then at that time is when he will provide. But that's deals with paragraph 14 on page 5, Judge. He thought that this was, at this point was the time where he was going to be telling what he knew.

The Court: Well, if you wanted to get a downward, motion for downward departure, if was before now. He was supposed to be debriefing with the agents before now.

Mr. Canales: Well, he has made himself available and he has told everyone concerned that he is ready to testify, but perhaps he will be debriefed more later on, Judge. But he has not revealed or he has not — at this point it doesn't really matter, really.

The Court: Okay. Well, this is the deal: Do you want to — Mr. Delgado, you have, when you pled guilty you pled guilty to a money laundering count, that you knew that the money had been used in an illegal enterprise, and now you're telling me that all you did was lend this money and you didn't know it had anything to do with

8

marijuana.  So would you —— I'll give you the opportunity at this time to withdraw your guilty plea and go to trial.  Would you like to do that, sir?

The Defendant: No.

The Court: All right.  You want to leave your guilty plea but continue to tell me that you didn't know that the money was used for drugs?

The Defendant: What?

The Court: You told me earlier that you did not know the money was used for drugs.

The Defendant: Yes.

The Court: So what is it you thought you pled guilty to?

The Defendant: That I gave the money to a man and that man was not exactly the one who was on the contract. That's why I thought that —— I was confused with the name of the person that I had delivered the money to.

\* \* \*

The Court: All right.  Was your participation in this offense limited to just lending money and you did not know it had been used in drugs?

The Defendant: I gave it to the man.

The Court: Okay.

The Defendant: And I didn't exactly know if he was going to use it for drugs or not.

The Court: Well, what did you think he was going to use it for?

The Defendant: When he asked me for it, he needed it and he asked me to give it to him, and later when they stopped the man with the car I learned that he had used it to buy marijuana.

\* \* \*

The Court: Did you know the money was a proceed from an unlawful activity?

9

The Defendant: Yes.

The Court: What was the unlawful activity?

The Defendant: Well, that they were going to purchase marijuana with it.

The Court: So you knew that when you gave it to them?

The Defendant: When I gave it to them, no. I learned that later.

The Court: Well, the money that you had in your hand when you lent it, was it from the sale of marijuana?

The Defendant: No.

The Court: I'm going to deny you acceptance of responsibility, Mr. Delgado. Are you sure you don't want to withdraw your plea?

The Defendant: No.

The Court: You're not sure or ——

The Defendant: I'm sure.

The Court: You do not want to withdraw your plea?

The Defendant: No.

Before pronouncing sentence, the court permitted Delgado to confer with his counsel again, and the public defender continued to characterize Delgado's statements as a misunderstanding. Pursuant to the plea agreement, the government requested a downward departure to a 36 month prison term. The court denied the request, determining that Delgado had failed to accept responsibility for his role in the drug-trafficking conspiracy. The court found that Delgado's testimony at the sentencing hearing was neither credible nor reliable, and adopted the PSR as amended for Delgado's failure

10

to accept responsibility, sentencing him to 120 months in prison. Delgado timely appealed, claiming only that his plea was not knowing and voluntary as he did not understand the nature of the charge to which he pleaded. His sole contention in this respect is that he did not understand that he had to know that the money he furnished was going to be used to purchase drugs.

## II

## ANALYSIS

Rule 11 prescribes procedures designed to ensure that pleas are entered knowingly and voluntarily. It provides that "[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . . the nature of the charge to which the plea is offered."[6] "[T]he values lying at the heart of the rule's concerns [are] absence of coercion, understanding of the accusation, and knowledge of the direct consequences of the plea."[7]

When an appellant claims that a district court has failed to comply with FED. R. CRIM. P. 11, we "conduct a straightforward, two-question 'harmless error' analysis: (1) Did the sentencing court in fact vary from the procedures required by Rule 11, and (2)

---

[6]FED. R. CRIM. P. 11(c)(1).

[7]United States v. Dayton, 604 F.2d 931, 939 (5th Cir. 1979) (en banc), cert. denied, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980).

11

if so, did such variance affect substantial rights of the defendant?"[8]  To determine whether a Rule 11 error affects substantial rights, "we focus on whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty."[9]

Delgado predicates the district court's Rule 11 error on the language barrier with which he was confronted at his re-arraignment.  He argues that his own inability to understand the English language, coupled with his counsel's inability to speak Spanish proficiently, prevented him from grasping the money laundering charge.  As evidence of his miscomprehension, he offers the sentencing hearing colloquy reproduced above.

Delgado fails, however, to invite our attention to evidence of the trial court's failed compliance with Rule 11 as contributing to

_____

[8]United States v. Johnson, 1 F.3d 296, 298 (5th Cir. 1993) (en banc).  The government contends that we must review Delgado's Rule 11 variance claim for plain error in light of the fact that Delgado did not move to withdraw his plea in the district court.  United Stated v. Paloma, 998 F.2d 253, 256 (5th Cir.), cert. denied, 510 U.S. 937, 114 S.Ct. 358, 126 L.Ed.2d 322 (1993).  The guilty plea vacatur requested on appeal in Paloma, however, was predicated on an alleged plea agreement violation by the government.  Id.  An appellant need not have filed a motion for plea withdrawal in the district court in order to complain of Rule 11 error on appeal.  See United States v. Reyna,130 F.3d 104, 107 & n.2 (5th Cir. 1997), cert. denied, — U.S. —, 118 S.Ct. 1328, — L.Ed.2d — (1998), and United States v. Still, 102 F.3d 118, 122 n. 9 (5th Cir. 1996), cert. denied, — U.S. —, 118 S.Ct. 43, 139 L.Ed.2d 10 (1997) (both noting that Rule 11 challenges can be adjudicated on direct appeal without an initial presentation of the particular arguments to the district court, and both applying harmless error review).

[9]Johnson, 1 F.3d at 298.

12

his purported misunderstanding. The only evidence he adduces from which the trial court's responsibility for the communication gap can be inferred is the fact that Delgado's counsel was only provided with the somewhat confusing and esoteric criminal information as a means of explaining the charge to his client by way of translation.

Even assuming (a) that the failure to "provide" more indicates a lack of solicitousness on behalf of the court, and (b) such solicitousness is mandated by Rule 11, the record is clear that the court took adequate precautions to ensure that Delgado's comprehension of the money laundering charge was not hindered by language difficulties: The court asked the government to review the elements of the offense at the re-arraignment Rule 11 hearing (during which an interpreter was present), and Delgado indicated that the discussions he had with his lawyer about the charge went beyond a mere rote translation of the information. Furthermore, Delgado unequivocally acknowledged that the government's factual proffer was correct at the Rule 11 hearing. Not until the sentencing hearing did Delgado deny that the man to whom he "loaned" the money was Maldonado.

Most significantly, even assuming arguendo that the court somehow failed to comply with Rule 11, there could be no reversible error because Delgado cannot demonstrate the court's allegedly failed compliance affected his substantial rights. As the record of the sentencing hearing reproduced above indicates, on ferreting

13

out Delgado's putative confusion, the court twice asked him if he wanted to withdraw his guilty plea, informing him that, in pleading guilty, he had admitted to knowing that the money was going to be used in an illegal enterprise. Delgado's refusal to accept the court's withdrawal offer demonstrates to our satisfaction that an improved understanding of the charge would not have influenced his decision to stand by the plea agreement rather than reject it and incur the risks attendant on going to trial on all counts.[10]

## III

## CONCLUSION

In light of the foregoing, we decline to reverse Delgado's money laundering conviction and order a new trial, and likewise decline to vacate his sentence.[11]

AFFIRMED.

---

[10]See United States v. Montoya-Camacho, 644 F.2d 480, 487 (5th Cir. 1981) ("In light of this knowledge, we can infer [that the defendant] made a logical, reasoned decision to plead guilty to Count One rather than run the risk of being convicted and sentenced for all five counts.").

[11]We note that, at sentencing, Delgado twice refused the court's offer to allow him to withdraw his plea of guilty. Were it necessary to address the effect of so doing, it is likely we would conclude that he waived the complaint he now advances on appeal.